Johnny Lee BURGANS, Appellant,

v.

STATE of Indiana, Appellee.

No. 02S00–8603–CR–245.

Supreme Court of Indiana.

Nov. 24, 1986.

John F. Surbeck, Jr., Robert Owen Vegeler, Deputy Public Defenders, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A jury trial resulted in a conviction of Murder and Felony Murder. The convictions were merged for sentencing purposes. In a subsequent hearing, the jury recommended that the death penalty not be imposed. Appellant was sentenced to a term of forty (40) years with an additional twenty (20) years for aggravating circumstances.

The facts are: In the late afternoon of February 5, 1985, appellant, accompanied by Phillip Lawless, walked to a nearby liquor store, purchased a pint of Dark Eyes Vodka, and consumed its contents. While walking, appellant and Lawless discussed committing a robbery at the residence of George Lantz. Appellant was introduced to Lantz approximately a week earlier by an acquaintance named Ann. Appellant spent a couple of nights at Lantz' home posing as Ann's brother Mike. It was during this time that appellant discovered a silver place setting in Lantz' bedroom dresser.

As appellant and Lawless proceeded toward the residence of George Lantz, Lawless became frightened and returned home. Appellant continued with the plan and knocked on the side door. George Lantz answered and escorted appellant to the kitchen. When Lantz turned his back during their conversation, appellant picked up a large ceramic object and struck Lantz over the head. Lantz fell to the floor moaning. Appellant then tore the power cord from an electric fan and bound Lantz' hands behind his back and tied them to his foot. Appellant returned to the kitchen, took a butcher knife from the sink and thrust the knife through the back of Lantz' neck. Appellant did not remove the butcher knife.

Appellant searched Lantz' pockets and removed $50 from his billfold and the keys to a green 1977 Pacer automobile. Appellant then removed several objects of value from the residence, placed them in the automobile, turned out the house lights, locked the doors and left the scene in the automobile.

Appellant contends the trial court erred in the method used to select the veniremen. The trial court utilized a computer to generate a random list from the registered voters of Allen County. This was done pursuant to Ind. Code § 33–4–5–2. *See, Pitman v. State* (1982), Ind., 436 N.E.2d 74.

Appellant, a white male under twenty-one (21) years of age, maintains that a list of this nature will produce an underrepresentation of persons who are relatively uneducated, have no visible means of support, live with their parents and are not registered voters. Appellant argues this method failed to indicate whether or not a particular voter is a householder or freeholder and is therefore defective.

Appellant's argument is without merit. The statutory provision does not require that names of prospective jurors be obtained from a combined list of registered voters and property owners. In *State ex rel. Brune v. Vanderburgh Circuit Court* (1971), 255 Ind. 505, 265 N.E.2d 524, we expressly approved the use of a voter registration list for the selection of prospective jurors.

We have recently dealt with challenges to the use of voter registration lists as a method of jury selection. *Smith v. State*

(1985), Ind., 475 N.E.2d 1139. In *Smith* we reiterated that:

"There must be a practical method of choosing prospective jurors. The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross-section of the people in the county, cannot be said to violate the rights of the accused, in the absence of showing that such use is made in a deliberate attempt to exclude certain groups from jury selection." *Id.* at 1143.

■ Although prospective jurors must be selected from a fair cross-section of the community, there is no requirement they be mathematically proportioned to the character of the community. *Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690; *Tawney v. State* (1982), Ind., 439 N.E.2d 582.

■ Appellant has not demonstrated that the voter registration lists do not present a reasonable cross-section of the people of Allen County or that their use resulted in the exclusion of certain groups from jury selection. The trial court did not err in overruling appellant's challenge to the jury venire.

Appellant next contends that his waiver and confession were not voluntarily and intelligently made because the police did not advise him that the death penalty was possible before commencing custodial interrogation.

■ The legal standard to be applied to determine whether an accused has voluntarily waived his rights is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises or other improper influences. *Armour v. State* (1985), Ind., 479 N.E.2d 1294; *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165.

■ The record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the confession. Nor is there any question about appellant's comprehension of the full panoply of rights set out in the *Miranda* warnings and of the potential consequences of a decision to relinquish them.

Appellant's decision not to rely on his rights was uncoerced, he at all times knew he could stand mute and request a lawyer. He was aware of the State's intention to use his statements to secure a conviction. We therefore find the waiver is valid as a matter of law. The trial court did not err by admitting appellant's confession.

■ Appellant also maintains that if he had known the death penalty was possible he would not have confessed. Appellant suggests that we adopt a new rule which requires a suspect to be informed, prior to a custodial interrogation, that the death penalty is possible. We decline to adopt such a rule.

*Miranda* does not require that an accused be specifically informed by the interrogator of the precise nature of the potential charges for which the accused is being questioned. *Armour, supra.*

Recently, in *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, the Supreme Court indicated that the police need not inform a suspect prior to interrogation what the precise nature of the charges may be. The nature of the offense is often dependent upon circumstances unknown to police or events which have not yet occurred. It would be unreasonable to expect the police to speculate as to the nature of the criminal conduct at issue before deciding how to interrogate the suspect. *Id.* at 431, 104 S.Ct. at 3146, 82 L.Ed.2d at 329.

Appellant next contends his sentence of sixty (60) years imprisonment is manifestly unreasonable.

■ A sentence is not manifestly unreasonable if any reasonable person could find it to be appropriate in light of the nature of the offense and the character of the offender. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Carter v. State* (1984), Ind., 471 N.E.2d 1111.

■ The presumptive sentence for felony murder is forty (40) years. Twenty (20) years may be added for aggravating cir-

cumstances and ten (10) years may be subtracted for mitigating circumstances. Ind. Code § 35-5-2-3. The trial court must set forth a specific and individualized statement of what particular facts of the case support the imposition of an enhanced sentence. *Rust v. State* (1985), Ind., 477 N.E.2d 262; *Allen v. State* (1982), Ind., 439 N.E.2d 615.

The trial court stated the following reasons for the sentence:

"The Court finds as aggravating circumstances that the defendant was on probation at the time he viciously robbed the person and residence of George C. Lantz, a sixty-seven (67) year old male human being, all of said acts occurring within the sanctity of the victim's home, and further, that the imposition of the presumptive or reduced sentence would depreciate the seriousness of the crime."

■ We conclude that the statement of reasons provided by the trial court is sufficient to support imposition of an additional twenty (20) year term.

Finally, appellant contends the trial court abused its discretion by denying his motion for funds to appoint a social psychologist to assist in the selection of the jury.

■ The appointment of experts to assist the defense is a matter within the trial court's discretion. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214.

■ Appellant filed his special plea of insanity and the trial court appointed three psychologists to examine him. They concluded that appellant was able to understand the nature of the charges against him, able to assist his counsel in the preparation of his defense, is sane and was so at the time of the alleged offense. After the examination, appellant withdrew his plea of insanity. The trial court then allowed funds for the appointment of a psychologist to examine appellant with respect to his competency to stand trial and his psychological profile. It was within the trial court's discretion to determine whether or not to appoint, at state expense, an additional psychologist to assist appellant in the *voir dire* proceedings. *Craig v. State* (1983), Ind., 452 N.E.2d 921.

Appellant fails to explain why the social psychologist was necessary for the *voir dire* questioning or how he was prejudiced by the trial court's denial of his motion. We find no error committed by the trial court on this issue.

The trial court is in all things affirmed.

All Justices concur.