James L. HUSPON, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8705–CR–495.

Supreme Court of Indiana.

Nov. 6, 1989.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of sixty (60) years, Burglary, a Class A felony, for which he received a sentence of fifty (50) years, and Robbery, a Class A felony, for which he received a

sentence of fifty (50) years, his sentences to be served consecutively.

The facts are: At approximately 5:30 a.m. on December 12, 1985, Juana Scott was delivering the morning newspaper to homes on Moreland Avenue in Indianapolis. She saw three black males running out of a house on Moreland, and when they saw her, they stopped and huddled together. When the three men proceeded down an alley, Scott continued delivering her newspapers. When she delivered the paper to 936 Moreland, the home of Boris Tom, she noticed that the lights were on in the home, which was unusual. She looked inside the home and saw a man lying face down on the floor. She realized that this was the home from which she had seen the three men running. She called the police.

When police arrived at Tom's home, his car engine was still warm, and he was still alive. However, Tom later died from a gunshot wound to the chest. In Tom's home, police found obscene handwritten messages on the walls indicating the victim was homosexual and that they intended to kill him.

Later in the morning on December 12, 1985, appellant's neighbor saw two young black men, who were carrying what appeared to be a gun, enter a vacant house on the block. Police were called and they arrested the two men, who were appellant's brother and appellant's cousin, outside of appellant's home. Police obtained permission from appellant's mother to search his home for the purpose of conducting an investigation for stolen or sawed-off weapons. In appellant's room, police found a pair of binoculars which were later identified as belonging to Tom. Also they found a commemorative coin and a car key belonging to Tom. Several miniature liquor bottles were found hidden in appellant's home and in the vacant house next door. Tom had possessed similar bottles. The police found more bottles in the binocular case which they found outside of Tom's home.

A handwriting expert compared the handwriting of appellant and his brother with that of the handwriting on the walls in Tom's home. The expert testified that most of the writing on the walls was done by appellant. A fingerprint found on a tissue box in Tom's home was determined to be that of appellant's brother.

Kenneth Edwards, an acquaintance of appellant, testified that before Tom was killed, appellant told him that he was going to break into the house at 936 Moreland and that Tom was a "fag."

Robert Henson testified that when he was incarcerated with appellant in the Marion County Jail, he heard appellant say that he, his brother, and his cousin went into the man's house, took stuff, and left. They came back later when the man was there and appellant's brother shot him.

■ Appellant argues that his convictions are not sustained by sufficient evidence. He concedes that evidence was presented which established that he had been in Tom's home, but he claims that no evidence proved he was in his home at the time he was killed, or that he was connected to the killing at all. He also states that the testimony of Juana Scott, Kenneth Edwards, and Robert Henson was not credible, he was denied his lawful presumption of innocence, and his convictions rest upon unreliable circumstantial evidence.

On a claim involving the sufficiency of the evidence, this Court will not reweigh the evidence nor judge the credibility of the witnesses. *Moore v. State* (1987), Ind., 515 N.E.2d 1099. We note that the jury was instructed on the presumption of appellant's innocence; thus, a claim of denial of that presumption cannot stand. *Oates v. State* (1982), Ind., 429 N.E.2d 949.

The State's burden of proof on each element of an offense charged may be established by circumstantial evidence and the logical inferences drawn therefrom. *Watkins v. State* (1984), Ind., 468 N.E.2d 1049. On review, this Court need not determine that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn which supports the finding of guilt. *Kremer v. State* (1987),

Ind., 514 N.E.2d 1068; *Smith v. State* (1984), Ind., 468 N.E.2d 512.

Appellant possessed the property stolen from Tom, including his car key, and an expert testified that appellant had done most of the writing on the walls, which included such sayings as, "Kill Fags," and "Dear Tom why are you gay I'm gonna kill you." From the evidence, the jury may have reasonably inferred that appellant broke into Tom's home to steal his property, either left and came back, or lay in wait for Tom to come home, then took his car key and killed him. Even if appellant's brother shot Tom, appellant is responsible for his murder under accomplice liability principles. *Ford v. State* (1988), Ind., 521 N.E.2d 1309. These facts support appellant's conviction of burglary, robbery, and murder.

■ Appellant asserts reversible error occurred when the trial court admitted into evidence items police found in appellant's bedroom. He contends that he was not given his *Miranda* rights before he gave his consent to police for the search of his room. Because the State failed to prove he explicitly waived his right to counsel before he consented to the search, appellant concludes the articles found during the search should have been excluded.

During the motion to suppress hearing, Officer Aurs testified that they responded to a call directing them to a vacant house into which a witness had seen two black males carry what he believed were sawed-off shotguns. When police located the witness, he told them the men left the vacant house and went into appellant's house. A brief search of the vacant house revealed no weapons.

Police saw two men exit appellant's house and they were arrested. Officer Aurs then approached appellant's residence and told appellant's mother that they had received information that sawed-off shotguns had been carried into her home. She told him that there was nothing in the house, and they were welcome to search it. She signed a consent to search form, and they searched the house. When they approached appellant's bedroom, police asked her whether anyone was in there, and she said her son was and that it was his room. They asked appellant whether they could enter and search his room, and he consented. He also consented to their search of a suitcase in his room. Inside, Detective Aurs found a bottle of Seagram's Bicentennial Edition 7 Crown, which matched three bottles he had found in investigating the burglary of Tom's house, and other items belonging to Tom.

Appellant asserts he had an expectation of privacy in his bedroom and he was entitled to the advice of counsel before giving his consent, citing *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634. This Court held in *Pirtle* that a consent to search was invalid when given by one under full custodial arrest, after having stopped a formal police interrogation by requesting the opportunity to confer with an attorney. *Peterson v. State* (1987), Ind., 514 N.E.2d 265.

Appellant was not in custody at the time he gave his consent. Officer Aurs testified that during the search, appellant remained in his bedroom and made no attempt to leave the room. He stated that appellant was not in custody at any time, but that if he had attempted to leave the room, he probably would have stopped him because of the possibility that weapons could be found in other parts of the house. However, appellant was unrestrained and had no reason to believe he could not leave. It is appellant's perception of his position as to whether he reasonably believed his freedom of movement would have been curtailed by police which is relevant in determining whether he was in custody. *Scott v. State* (1987), Ind., 510 N.E.2d 170. We find that appellant was not in custody at the time he gave his consent; thus the rule in *Pirtle* does not apply to his case.

■ Additionally, appellant's mother signed a consent to search form and thereby obviated the search warrant requirement. *Stallings v. State* (1987), Ind., 508 N.E.2d 550. The record shows that appellant's mother was a co-lessee of the residence with her boyfriend. At the time of the search, appellant was approximately eighteen years old and shared a room with

his brothers in his mother's home, without paying rent. We find the warrantless search was proper because appellant's mother had the authority to consent to a search of the entire house, and appellant himself consented to the search of his room. *United States v. Wright* (8th Cir. 1977), 564 F.2d 785. Therefore, the evidence seized pursuant to that search was properly admitted at trial.

■ Appellant contends that because the warrantless search was illegal, the fruits of that search should not have served as a basis for a later search warrant, and his motion to quash the search warrant and suppress the evidence found pursuant to the second search should have been granted. We stated above that the warrantless search was proper. Therefore, appellant's argument is without merit.

Appellant argues reversible error occurred when the trial court admitted into evidence State's Exhibits Nos. 80, 81, and 82 and testimony relating to these exhibits.

After appellant's arrest, the State obtained an order for a sample of his handwriting. The State's handwriting expert determined that appellant had attempted to disguise his handwriting in part of the sample. Therefore, the State obtained a warrant to search his jail cell for a sample of the true handwriting of appellant and his brother. Appellant was told to gather up his belongings and put them in a sack. Police seized the sack containing a Marion County Jail commissary card, which was State's Exhibit No. 80, and various papers, letters, and Bibles, which were State's Exhibit No. 82. Police also collected documents, books, and letters from appellant's brother's cell in a similar fashion, which comprised State's Exhibit No. 81.

Appellant objected to the expert's testimony concerning those exhibits on the basis that they were not properly authenticated because the expert stated that he did not witness appellant perform the writing found in those exhibits, nor did anyone tell the expert that they had witnessed appellant doing so. The trial court concluded that because appellant had been told to gather up his belongings, his belongings were placed in a container and Exhibits 80 and 82 came from that container, they were sufficiently identified as appellant's.

Indiana Code § 34-3-6-1 states that in any proceeding where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceedings to prove or disprove such genuineness.

■ Before evidence of comparison may be given, the genuineness of the handwriting serving as the standard of comparison must be established. The genuineness of the standard may be established (1) by the admission of the person sought to be charged with the disputed writing made at or for the purpose of the trial or by his testimony; (2) by witnesses who saw the standards written or to whom or in whose hearing the person sought to be charged acknowledged the writing thereof; (3) by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns. *Wininger v. State* (1988), Ind.App., 526 N.E.2d 1216.

The expert in appellant's case testified that upon analyzing the portion of appellant's police-requested handwriting sample which was not disguised, he determined that there were strong similarities between appellant's handwriting sample and the writing on the walls of Tom's home. However, to form a conclusive opinion he analyzed the commissary card from appellant's cell and determined that there were many conclusive similarities between it and the writing on the wall. He also used, as standards for comparisons, letters found in Exhibit 81. He cross-compared the letters to the police-requested handwriting sample and the commissary card and determined that appellant wrote them all. Upon comparing all the exhibits, the expert concluded that appellant was the writer of most of the handwriting found on the walls of the Tom home.

The commissary card from appellant's cell listed items such as soap, toothpaste, and candy and was signed by Jimmy Huspon. In printing on the side of the card was appellant's name, date of birth, and cell number. We find that the card was properly authenticated under standard number three above because it was adopted and acted upon by appellant in his daily business. The expert relied upon it and the legible police-requested sample to cross-compare with other samples and with the writing at the crime scene. We find the expert relied upon properly authenticated standards. The admission of his testimony was not error.

■ Appellant alleges certain exhibits were irrelevant and improperly admitted at trial. He first complains about State's Exhibit No. 53, which was a tape from Boris Tom's telephone answering machine. When the tape was offered into evidence, appellant objected to it on the basis that its chain of custody had not been established. On appeal, he states the tape was irrelevant. Appellant cannot base his current allegation of error on an objection made at trial which bears no relation to his complaint on appeal. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

■ Additionally, the tape was identified by Tom's son as being the tape from his father's answering machine, and he stated that after his father was murdered he found it in a bag with some liquor bottles, which was unusual because it was normally in place, hooked up to the telephone. He also stated that the tape had on its outgoing message the voice of a stranger. When Kenneth Edwards gave his statement to police, they played the tape for him, and he stated that the voice on the tape was appellant. However, at trial he stated that he was not sure whether he recognized the voice.

Any fact which legitimately tends to connect a defendant with a crime is admissible when a reasonable inference may be deduced from such evidence. *Harris v. State* (1985), Ind., 480 N.E.2d 932.

The fact that the outgoing message on the victim's answering machine had a voice on it which at one time was identified as appellant's is relevant to establish that appellant was in the victim's home. The fact that Edwards' identification of the voice wavered at trial went to the weight of his testimony, and not the admissibility. *Sons v. State* (1987), Ind., 502 N.E.2d 1331.

■ Appellant also argues State's Exhibits Nos. 62 and 70 were improperly admitted. Exhibit No. 62 was a tissue box from Tom's home on which police found a fingerprint identified as that of appellant's brother. Exhibit No. 70 was the fingerprint card related to Exhibit No. 62.

The State presented evidence that appellant and his brother were involved in the burglary, robbery, and murder. Therefore, appellant's brother's fingerprint at the scene of the crime was relevant to the State's case. *Harris, supra.*

■ Appellant complains that Exhibit No. 71, a box of miniature liquor bottles found on the floor of the vacant house next to appellant's residence, was unrelated to his case. However, appellant's brother and cousin had been observed entering that building the morning of the crime, and the victim was known to have a collection of miniature liquor bottles in his home. Therefore, Exhibit No. 71 was relevant. *Id.* We find no error in admitting the exhibits.

■ Appellant states that the trial court committed error by admitting into evidence State's Exhibits Nos. 28, 32, 35, and 36 because they were cumulative and repetitious of other exhibits.

The exhibits about which appellant complains were part of a series of photographs of the various messages written on the walls throughout Tom's home. Each photograph showed a different wall or object which had a handwritten message on it. However, due to the proximity and proliferation of handwriting all over the walls, some photographs overlap and the same message is visible twice. We find that appellant's defense has not suffered reversible error because cumulative evidence

alone is not grounds for reversal. *Watkins v. State* (1984), Ind., 460 N.E.2d 514.

■ Appellant argues reversible error occurred when the trial court admitted into evidence a bloody T-shirt and jacket. Detective Crooke testified that the clothes were found on the floor of Tom's living room and that the jacket was cut possibly by emergency medical personnel before they administered first aid to Tom. Appellant objected to the admission of the clothing, stating the exhibits were irrelevant and admitted simply to inflame the passions of the jury. The State responded that they were relevant in showing the condition of the victim and the jacket was evidence that Tom had just arrived home and still had his coat on when he was shot. The trial court admitted the exhibits over appellant's objection.

We agree with the trial court that the exhibits were relevant to the State's assertion that Tom arrived home and was shot in the chest by intruders. *Harris, supra.* We have held that in homicide cases, the prejudicial effect of admitting gruesome photographs of the victim's corpse is outweighed by the relevancy of the exhibits. *Huffman v. State* (1989), Ind., 543 N.E.2d 360. We find no error in admitting the exhibits.

■ Appellant alleges the trial court erroneously instructed the jury. He complains about Instruction No. 9G, which stated:

"You are instructed that a person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense even if the other person:
1. Has not been prosecuted for the offense; 2. Has not been convicted of the offense; or 3. Has been acquitted of the offense."

Appellant argues the instruction was irrelevant because there was no evidence of a conspiracy or aiding and abetting.

When there is some evidence that a second party was involved in the crime, an instruction on accessory liability is proper. *Dorsey v. State* (1986), Ind., 490 N.E.2d 260. In appellant's case, Scott testified that she saw three men exit Tom's home, then she found Tom on the floor and presumed he was dead. Not all of the handwriting on the walls was appellant's. The content of Instruction 9G was proper in that it was a near-verbatim copy of Ind. Code § 35–41–2–4 on assisting a criminal. We find the instruction was sufficiently supported by the evidence.

■ Appellant contends his sentence must be modified because the trial court failed to sufficiently articulate the aggravating circumstances as they applied to his case and relevant mitigating circumstances were not considered. He also argues the trial court improperly considered uncharged criminal activity as an aggravating circumstance.

This Court reviews a sentence to determine whether it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Scott, supra;* Ind.R.App.Rev.Sen. 2(1). When a trial court decreases or increases a sentence due to mitigating or aggravating circumstances, the factors used in making that determination must be listed in the record. The weight to be given the aggravating or mitigating circumstances is left to the discretion of the trial court, and mitigating factors are not a mandatory consideration in sentencing. Only one valid aggravating factor need be shown to sustain the enhancement of a presumptive sentence. *Shields v. State* (1988), Ind., 523 N.E.2d 411.

The record shows that prior to announcing appellant's sentence, the trial court considered the following factors: as mitigating factors, appellant was only seventeen years old at the time the crime was committed, and the testimony of appellant's mother revealed that appellant had no adult leadership. The aggravating circumstances included the fact that appellant had a violent criminal history, he had shot another person previously, and police found in appellant's house ammunition and items which were from three other burglaries; the killing of Tom was an aggravating circumstance in that it was a senseless killing of a

business-owner and good citizen; the writing on the walls was evidence of premeditation; appellant showed no remorse; he was in need of correctional and rehabilitative treatment; and any less than a great deal of time would depreciate the seriousness of the crime and his prior activities.

The nature of the crime and the manner in which it was committed are properly considered as aggravating circumstances. *Rust v. State* (1985), Ind., 477 N.E.2d 262. Also, evidence of uncharged crimes may be considered for sentencing purposes as part of a defendant's criminal history. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071.

We find the trial court's sentencing statement to be sufficient. Appellant's sentence is not manifestly unreasonable.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur in result without separate opinion.

DeBRULER and PIVARNIK, JJ., concur.