Freddie **CONCEPCION**, Appellant,

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8808–CR–744.**

Supreme Court of Indiana.

March 6, 1991.

William L. Soards, Soards & Fruechten-icht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Count I, Robbery, a Class B felony; Count II, Conspiracy to Commit Kidnapping, a Class A felony; Count III, Kidnapping, a Class A felony; Count V, Murder in the Commission of a Robbery; Count VI, Murder in the Commission of a Kidnapping; Count VII, Robbery, a Class A felony; Count VIII, Conspiracy to Commit Kidnapping, a Class A felony; Count IX, Kidnapping, a Class A felony; Count XI, Murder in the Commission of a Robbery; Count XII, Murder in the Commission of a Kidnapping; Count XIII, Attempted Murder, a Class A felony; and Count XIV, Attempted Murder, a Class A felony. The trial court sentenced appellant on Count II to thirty (30) years, Count III to thirty (30) years, Count V to sixty (60) years, Count VIII to thirty (30) years, Count IX to thirty (30) years, Count XI to sixty (60) years, Count XIII to fifty (50) years, and Count XIV to fifty (50) years.

As to Counts I and VII, the trial court did not impose a sentence because it was a lesser offense of the offense of murder. No sentence was imposed on Counts VI and XII because he would have been punished·twice for the same homicide. The trial court further determined that Counts II and III, Counts VIII and IX, and Counts XIII and XIV should run concurrently with each other. Finally, the trial court determined that Count V should run consecutively with Counts II and III, Count XI should run consecutively to Count V, and Counts XIII and XIV should run consecutively to Count XI for a total sentence of two hundred thirty (230) years. This is a companion case to *Valentin v. State* (1990), Ind., 567 N.E.2d 792.

The facts are: On July 23, 1986, appellant and Samuel Valentin met Antonio Noyas at the Wheeler Mission in Indianapolis. During their stay at the mission, the three spent most of their time together.

On July 27, 1986, William Lanum, Sr., the victim in this case, went to the grocery store at approximately 10:00 p.m. When he did not return, William, Jr. went in search of him. When he was unable to locate his father, he called the police. He and his friend, Ken Davis, continued the search.

Approximately an hour and a half later he discovered his father's van at the Rodeway Inn. Upon approaching the van, he noticed two individuals in the front of the van. While he questioned the individuals as to the whereabouts of the owner, Davis called the police. During this time, William, Jr. was able to observe these two individuals.

Approximately five minutes later, a security guard arrived at the scene and shined a flashlight into the van. Three individuals were in the van, and William, Jr. again was able to observe the individuals. Within a few moments, a Marion County Sheriff's vehicle arrived. The driver in the van told William, Jr. to drop his

weapon. William, Jr. then ran along the side of the van and warned the officers that the individuals in the van had weapons. Gunfire erupted between the police, William, Jr., and the individuals in the van. The driver of the van started the vehicle and fled the scene.

Officer Donna Pierce of the Indianapolis Police Department received a radio communication about the shooting and was informed that a blue van was involved. As she was travelling eastbound on 21st Street, she spotted the van going in the opposite direction. She immediately turned her vehicle around, gave chase, and eventually found the van where it had wrecked. The police officers started a search of the area and eventually found Noyas hiding in a closet in a nearby house. Police with their K-9 dogs searched in the area and found appellant and Valentin. A search of the area where appellant and Valentin were found led to the discovery of two handguns and a billfold belonging to Lanum.

Upon searching the van, the body of Lanum was found near the back of the van. Two pair of handcuffs and a white cord were found inside the van. An autopsy revealed that Lanum had been handcuffed as well as blindfolded and was killed by two gunshot wounds to the back of the head. Several rings and money were found inside the van. When appellant was arrested, he had $205 in his pockets.

Appellant first contends the trial occurred beyond time permitted under Ind. Crim.Rule 4.

A review of appellant's brief discloses no argument as to this issue. There is a statement that the asserted error is not arguable. Counsel is to be commended for his frank and correct assessment.

Appellant contends the trial court erred in the manner in which jury *voir dire* was conducted. He claims irregularities occurred with respect to the selection of the jury over objections by counsel that the trial court erroneously denied counsel permission to properly conduct *voir dire.*

■ In conducting and controlling *voir dire,* the trial court has broad discretion

and only an abuse of that discretion will warrant a reversal. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, *cert. denied,* — U.S. ——, 110 S.Ct. 257, 107 L.Ed.2d 206. Appellant contends he was denied a fair and impartial jury because the State during *voir dire* of prospective jurors made numerous objections to defense questions which the trial court sustained. Appellant makes a general supposition that prejudice resulted but does not cite any authority to support his position. In addition, we note that appellant makes only a general argument but does not show any resulting prejudice. Without citing any authority or valid arguments supported by the record, we find this argument waived. *See Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied,* 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773.

Appellant claims the trial court erred during *voir dire* in that it would not allow both counsels for appellant to question the same prospective jurors. However, the record reveals that both counsels participated in the jury selection. We find no error.

Appellant further contends the trial court erred by denying his motion for separation of prospective jurors during *voir dire.*

■ It is well settled that a defendant does not have the right to separation of prospective jurors absent circumstances which are highly unusual or potentially damaging to the defendant. *Lowery v. State* (1989), Ind., 547 N.E.2d 1046. In the instant case, appellant again claims a general statement of error but does not support his argument with case law or the record. Appellant neither alleged nor proved any highly unusual circumstances. His failure to support his argument results in a waiver of this issue. *Whitehead, supra.*

■ Appellant asserts that he was denied the opportunity to ascertain the impartiality of the prospective jurors. Again appellant's assertion of error is nothing more than that, an assertion. Appellant fails to support this with any authority nor

does he show how he was prejudiced. Thus he waives this issue. *Id.*

■ Appellant contends the trial court erred in reading the charges to the prospective jurors repeatedly thereby causing bias toward him. He specifically contends that as a result of restating the charges to the prospective jurors, this placed an undue emphasis on the violent nature of the crimes.

He does not cite any authority to support his claim. We cannot say the trial court abused its discretion by rereading the charges to the prospective jurors since the trial court has broad discretion in regulating the form and substance of the trial. We find that appellant has waived this issue by failing to support his position with case law.

■ Appellant also contends the trial court erred in denying his motion to quash the jury panel. Appellant contends his constitutional rights were violated because the venire was not a representative cross section of the community because it did not include members of minority groups, thereby establishing purposeful discrimination. He contends the use of voter registration lists alone is insufficient to produce a jury panel that constitutes a cross section of the community.

Pursuant to Ind.Code § 33–4–5–2(a), the petit jury venire may be drawn from the list of registered voters. The use of voter registration lists for selection of prospective jurors has been approved by this Court. *See Burgans v. State* (1986), Ind., 500 N.E.2d 183. Appellant's argument rests on the fact that of ninety-four prospective jurors called, there were no young male members of any minority race included.

This Court in *Smith v. State* (1985), Ind., 475 N.E.2d 1139 dealt with the issue of voter registration lists as a method of selecting a jury. In *Smith* we stated:

"There must be a practical method of choosing prospective jurors. The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the

people in the county, cannot be said to violate the rights of the accused, in the absence of showing that such use is made in a deliberate attempt to exclude certain groups from jury selection." [Citations omitted.] *Id.* at 1143.

In *Duren v. Missouri* (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 587, the United States Supreme Court established the standard by which a defendant may establish a *prima facie* violation of the fair cross-section requirement by stating:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process."

In the instant case, appellant has presented no evidence on any of these requirements established in *Duren*. He has failed to present any basis for reversal on this issue.

■ Appellant contends the trial court erred in instructing the jury on Preliminary Instruction No. 23 claiming Preliminary Instructions Nos. 21 and 22 adequately covered the law of conspiracy and asserts that Preliminary Instruction No. 23 was an incorrect statement of the law.

Preliminary Instruction No. 23 states:

"It is not essential to the completion of the offense of conspiracy that the felony proposed to be committed was in fact consumated [*sic*]. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, and an overt act was committed in furtherance of the agreement."

Preliminary Instructions 21 and 22 informed the trier of fact regarding the agreement element of conspiracy and intent requirement for a conspiracy agreement.

The manner of instructing the jury lies within the sound discretion of the trial court and we will not reverse unless the error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Travis v. State* (1986), Ind., 488 N.E.2d 342. In the instant case, Preliminary Instruction No. 23 is a correct statement of the law. *See Taylor v. State* (1981), Ind., 425 N.E.2d 141. The trial court did not err in giving this instruction.

Appellant also contends the trial court erred in not giving his Tendered Instructions Nos. 1, 2, 3, and 4. Instruction No. 1 was on the subject of intent. Instruction No. 2 defined the word "knowingly" and instructed the jury on its purpose. Instruction No. 3 cautioned the jury on confusing "intent" and "motive." Tendered Instruction No. 4 would have instructed the jury as to the effect of either party failing to produce a witness. An examination of the court's instructions which were given to the jury reveals that the matters contained in Tendered Instructions 1 and 2 were covered by the trial court.

▆ Appellant's Tendered Instruction No. 3 purported to inform the jury of the distinction between motive and intent. However, "motive" is not an element of any criminal offense. *See Light v. State* (1989), Ind., 547 N.E.2d 1073 and *Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45. The trial court did not err in refusing this instruction.

▆ Appellant's Instruction No. 4 covered the law on missing witnesses. We note that appellant in his brief does not show what witnesses were missing nor does he show that the trial court abused its discretion in refusing this instruction. We find no error in the refusal of appellant's instruction.

Appellant contends there was insufficient evidence to sustain some of his convictions and insufficient evidence to permit the jury to deliberate on the charges presented to them.

▆ Appellant first argues that the trial court did not apply the rule that a defendant is presumed innocent unless the facts prove him guilty beyond a reasonable doubt. Appellant contends there was a total lack of evidence that he committed the crimes and contends the State failed to carry its burden of proof. A review of the record reveals that the trial court instructed the jury on the presumption of innocence and the State's burden of proof. Where a jury has been instructed on the presumption of innocence, a claim by a defendant that he was not accorded the presumption of innocence is without merit. *See Huspon v. State* (1989), Ind., 545 N.E.2d 1078.

▆ Appellant also claims there was insufficient evidence to sustain the convictions of attempted murder involving Wayne Lanum, Jr., and Officer Robert Green.

This Court will not weigh conflicting evidence. *Butler v. State* (1989), Ind., 547 N.E.2d 270.

The record reveals that while searching for his father William Lanum, Jr., discovered his father's van in a parking lot at the Rodeway Inn. Upon approaching the vehicle, he noticed individuals in the vehicle and within a few minutes the police arrived. About this time shots were fired from the van at William, Jr., and Officer Green from the passenger side of the van where appellant had been sitting. Appellant in his own statement admitted that he did fire a gun out of the window but claimed that he did not aim it. Evidence also presented shows that appellant did reload his gun.

Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Johnson v. State* (1983), Ind., 455 N.E.2d 932. We find there to be sufficient evidence from which a reasonable trier of fact could convict appellant regarding the two attempted murder charges.

Appellant contends there was insufficient evidence to sustain his convictions on the two conspiracy to commit kidnapping charges claiming there is no evidence of an agreement to kidnap either of the victims as required by Ind.Code § 35–41–5–2.

The elements of conspiracy are: 1) intent to commit a felony, 2) an agreement with another person to commit the felony, and 3) an overt act in furtherance of that agreement. *Whittle v. State* (1989), Ind., 542 N.E.2d 981. However, the State is not required to prove the existence of a formal agreement, but the requisite knowledge and intent as well as the agreement may be inferred from circumstantial evidence including overt acts in furtherance of the criminal act. *Id.* A conviction for conspiracy may rest on circumstantial evidence alone. *Haymaker v. State* (1988), Ind., 528 N.E.2d 83.

The record reveals that appellant and his stepbrother, codefendant Valentin, came from New York and stayed at the Wheeler Mission in Indianapolis for a few days at which time they met Noyas. Appellant testified that he was aware that Noyas had a gun, and he had agreed to help Noyas obtain money through robbing somebody. He also stated that they would tie up the victim. In addition, it was appellant who got the taxi for the three men. Appellant handcuffed and gagged the cab driver. Appellant testified that it was Noyas who actually shot the cab driver. The defendants then divided the money equally.

The record reveals appellant was charged under Count II with Conspiracy to Commit Kidnapping while Hijacking a Vehicle with respect to the cab driver, Paul Reeves, under Ind.Code § 35–42–3–2(a)(2).

From the facts as presented to the jury, there was sufficient evidence from which they could find appellant guilty of the charge.

Appellant's other conspiracy count, as set forth in Count VIII, involved the kidnapping of William Lanum, Sr. and the hijacking of his van. Following the robbery and murder of Reeves, appellant and his companions then discussed another robbery. Appellant testified that when they left to commit the other robbery he was aware that Noyas was armed and had handcuffs. Appellant testified that codefendant Valentin handcuffed Lanum, although in his statement to the police he stated that he had handcuffed Lanum. He further testified that Noyas shot Lanum and that they split the money equally. From the facts as presented, the jury could find sufficient evidence from which to establish a conspiracy to kidnap. We find no error.

Appellant contends the trial court impermissibly allowed his statement to become part of the evidence heard by the jury.

A review of appellant's brief discloses no argument as to this issue. Again, counsel is to be commended for his frank approach.

Appellant contends his sentence is unreasonable and that the trial court did not consider all of the proper mitigating circumstances.

Appellant was sentenced to a total of two hundred thirty (230) years. He was found guilty on twelve counts which included four felony murder counts, two separate counts of attempted murder, two separate counts of robbery, and two separate counts of kidnapping. During the sentencing, the trial court merged certain offenses so that appellant was sentenced only on eight counts. The trial court gave aggravated sentences on four counts while on the other four he was given the presumptive sentence. The aggravated sentences were within the statutorily authorized term of years.

When reviewing a sentence, this Court has stated:

"A reviewing court will not revise a sentence authorized by a statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 521.

In addition, the trial court has the discretion to determine whether a sentence will be enhanced or mitigated due to aggravating or mitigating factors as well as de-

termining whether sentences will be served consecutively or concurrently. *Id.*

We stated in *Huspon, supra* at 1084: "When a trial court decreases or increases a sentence due to mitigating or aggravating circumstances, the factors used in making that determination must be listed in the record. The weight to be given the aggravating or mitigating circumstances is left to the discretion of the trial court, and mitigating factors are not a mandatory consideration in sentencing. Only one valid aggravating factor need be shown to sustain the enhancement of a presumptive sentence." [Citation omitted.]

In enhancing the sentences for felony murder, the Court observed the ruthless nature in which the crimes were committed and that the killings were not necessary for the purpose of the robbery or the kidnapping in view of the fact that the victims were immobilized at the time they were executed.

As to the attempted murder charges, the trial court found that the acts of appellant were a deliberate and willful attempt to commit murder in order to effect an escape. As to the consecutive sentences, the court found that appellant was guilty of repeated criminal activity over a period of two or three days which involved two killings and two attempted killings.

The court was correct in finding the nature of the crimes and the manner in which the crimes were committed may be considered as aggravating circumstances. *Id.* It is proper to use the same factors to enhance the sentence and to impose consecutive sentences. *Parrish, supra.*

This Court in *Hammons v. State* (1986), Ind., 493 N.E.2d 1250 addressed the issue of when a trial court must discuss mitigating factors. There we held that if a sentence is to be reduced from the presumptive sentence, mitigating factors must be stated. However, the trial judge is not obligated to explain why he has chosen not to mitigate the sentence. *See also Wilkins v. State* (1986), Ind., 500 N.E.2d 747.

The trial court did address the issue of mitigating factors where in giving the presumptive sentence on certain counts the trial court said:

"This takes into account the fact that he does not have a prior criminal conviction history."

In addition, we note that appellant fails to state what factors were mitigating. We also note that the trial court did list the aggravating factors relevant to appellant. Appellant has not shown an abuse of discretion on the part of the trial court in the sentencing.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., concurs and dissents with separate opinion.

DICKSON, J., concurs as to conviction but dissents as to sentence.

DeBRULER, Justice, concurring and dissenting.

Count II contains the allegation that the conspiracy to commit kidnapping was completed by the overt acts of handcuffing and gagging the victim Reeves. Count III contains the allegation that the commission of the actual kidnapping or confinement of Reeves occurred when the victim was handcuffed and gagged. Where the State's theory is that the conduct constituting the overt act in furtherance of an agreement to commit a substantive crime is the same as the conduct constituting that substantive crime, I would hold that the conspiracy and substantive crimes are insufficiently distinguishable to be separately punished. *Smedley v. State* (1990), Ind., 561 N.E.2d 776, 783 (opinion of DeBruler, J., concurring and dissenting). *See also Wethington v. State* (1990), Ind., 560 N.E.2d 496. The same overlap exists between Counts VIII and IX with respect to the victim Lanum. I would reverse the separate conspiracy convictions under Count II and VIII. Otherwise, I concur.