## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 05 2020, 10:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert J. Baldwin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 5, 2020

Court of Appeals Case No.
19A-CR-2624

Appeal from the Knox Circuit
Court

The Honorable Sherry B. Gregg
Gilmore, Judge

Trial Court Cause No.
42C01-1704-MR-1

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Robert J. Baldwin (Baldwin), appeals the trial court's sentence following his guilty plea to murder, a felony, Ind. Code § 35-42-1-1.

We affirm.

# ISSUES

Baldwin presents two issues on appeal, which we restate as:

(1) Whether the trial court properly took into account his guilty-but-mentally-ill plea; and

(2) Whether the trial court abused its discretion in its identification of the aggravators to impose an aggravated sentence.

# FACTS AND PROCEDURAL HISTORY

On April 4, 2017, Baldwin collected his five-year-old son from school early and took him home. At home, Baldwin smothered his son with a pillow, wrapped a USB cord around his neck, and sat on him until he thought the child had died. Baldwin called 911 and informed dispatch that he had killed his son. When law enforcement officers arrived at the residence, Baldwin directed them to the back bedroom where the officers found the child lying on the bed, blue-faced, and without a pulse. The child was airlifted to Riley Children's Hospital, where he died two days later. When interviewed by the officers, Baldwin confessed to the murder of his son. He explained that he had been planning to kill his son for some time. He described that he first attempted to kill the child with a

pillow, and when he did not succeed, he strangled his son with a USB cord and sat on him until he stopped breathing.

[5] On April 6, 2017, the State filed an Information, charging Baldwin with murder, a felony; strangulation, a Level 6 felony; and domestic battery on a person less than fourteen years old, a Level 6 felony. On May 30, 2017, Baldwin filed a notice of mental disease or defect. On May 3 and October 3, 2018, Baldwin was evaluated by three court-appointed psychologists. During these evaluations, Baldwin explained that he had been planning to kill one of his children for some time because his wife was leaving him, and he thought that if he killed one of his children he would go to jail where "at least he would be warm." (Defendant's Exh. 1). Baldwin specifically selected his five-year-old son because the other children were older and strong enough to run away from him.

[6] On April 9, 2019, Baldwin entered into a plea agreement with the State in which he agreed to enter a plea of guilty but mentally ill to murder in exchange for the State's dismissal of the remaining charges. On August 23, 2019, the trial court conducted a sentencing hearing. In sentencing Baldwin, the trial court found as mitigating circumstances: 1) the lack of criminal history; 2) the presence of mental health issues; and 3) his guilty plea. As aggravating factors, the trial court listed: 1) the victim's young age; 2) the abuse of Baldwin's position of trust; 3) the premeditation and pre-planning of the murder; and 4) the lack of remorse. Concluding that the aggravators significantly outweighed

the mitigating factors, the trial court sentenced Baldwin to an aggravated sentence of sixty-five years in the Department of Correction.

[7] Baldwin now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

### I. *Mental Illness*

[8] Baldwin contends the trial court failed to advise him that his "mental illness would essentially be of no consequence in his sentencing." (Appellant's Br. p. 7). He maintains that although he had a longstanding and well-documented mental illness, he was never "advised of the relative impact such a plea would have on sentencing." (Appellant's Br. p. 8).

[9] It is well recognized that a defendant who enters a plea of guilty but mentally ill is to be sentenced in the same manner as a defendant who is found guilty of the offense. *See* I.C. § 35-36-2-5; *see also Georgopulos v. State*, 735 N.E.2d 1138, 1141 (Ind. 2000). Thus Baldwin, and other defendants who plead or are found guilty but mentally ill, are not automatically entitled to any particular credit or deduction from their otherwise aggravated sentence because they are guilty but mentally ill. *Archer v. State*, 689 N.E. 2d 678, 684 (Ind. 1997). Nonetheless, our supreme court has directed trial courts to, at a minimum, carefully consider on the record what mitigating weight, if any, to allocate any evidence of mental illness, even though the court is not obligated to give the evidence the same weight as does the defendant. *Weeks v. State*, 697 N.E. 2d 28, 30 (Ind. 1998).

[10]  In its written sentencing statement, the trial court found as follows:

> The [c]ourt also considers, as the Defense has requested, that [Baldwin] has been diagnosed with and treated with mental illness for the majority of his life, and has suffered from such to the extent that he was awarded and received social security disability benefits. The [c]ourt appointed mental health evaluators all concluded that [Baldwin] suffers from mental illness. However, they also concluded that [Baldwin] knew what he was doing when he committed this crime and that he was competent to stand trial if a trial was to be held. The [c]ourt has considered this factor in mitigation of his sentence.

[11]  (Appellant's App. Vol. III, p. 25). Accordingly, the trial court considered Baldwin's mental illness during sentencing. However, as a trial court is not obligated to "credit or weigh a possible mitigating circumstance as defendant suggests it should be credited or weighed" and because Baldwin was found to be cognizant of his actions at the time of the murder, the trial court awarded his mental illness only minimal mitigation. *Archer,* 689 N.E.2d at 684.

## II. *Aggravating Circumstances*

[12]  Baldwin next contends that the trial court abused its discretion when it found as aggravating circumstances that the killing of his son was premeditated and that he had committed the murder knowingly, because he claims both aggravators to also be elements of the crime of murder.

[13]  So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.

2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id.* at 490-91.

[14] Turning to the trial court's identification of aggravators, Baldwin challenges the trial court's finding that the killing of his son was premeditated as the element of premeditation is also an element of the crime of murder. In its written sentencing statement, the trial court observed with respect to this aggravator as follows:

> The [c]ourt also finds as an aggravating factor that this crime was pre-planned and pre-meditated. [Baldwin] told the police that he planned to kill three (3) of his children and that he killed [his son] first because the opportunity was there. He knew when he picked that child up that day what he was going to do and he went through with it. That child could not have had any idea when he went home with his own father, what his father had planned for him and at five (5) years old, he was defenseless, an innocent child. Further, [Baldwin] showed absolutely no remorse for his actions. He just wanted to commit a crime so bad he would go to prison. He saw no other way out of a bad situation, so he killed his child instead of protecting him, in order to take care of himself.

(Appellant's App. Vol. III, p. 24). Murder is defined as the knowing or intentional killing of another human being. *See* I.C. § 35-42-1-1. As such, the element of pre-meditation is not specifically included as an element of the crime. Rather, here, the trial court used the premeditated nature of the killing— as confessed by Baldwin—as a description of the nature and circumstances of the offense. *See McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001) (Generally, the nature and circumstances of a crime is a proper aggravating circumstance); *Concepcion v. State*, 567 N.E.2d 784, 791 (Ind. 1991) (holding that the manner in which a crime is committed can be considered as an aggravating circumstance.)

[15] Baldwin also asserts that the trial court aggravated his sentence because he committed the murder "knowingly" and attributes this "knowing" aggravator to the trial court's comment that when law enforcement officers arrived at Baldwin's house, his responses to their questions were "clear, logical, understandable." (Appellant's Br. p. 8). However, in the trial court's written sentencing statement, the court only listed four aggravators: 1) the victim's young age; 2) Baldwin's abuse of position of trust; 3) the premeditation and pre-planning of the murder; and 4) his lack of remorse. Thus, even though the trial court might have described Baldwin as knowingly killing his son, the trial court did not count it as a specific aggravator for sentencing.

[16] Nevertheless, even if "knowing" could be considered an improper aggravator, we may affirm the sentence if we can "say with confidence that the trial court would have imposed the same sentence." *Webb v. State*, 941 N.E. 2d 1082, 1090 (Ind. Ct. App. 2011). Here, under the particularly heinous circumstances of his

crime, we are very confident that the trial court would not have wavered by imposing a lesser sentence. The gruesome killing of a five-year-old child at the hands of his own father merely for the father's own interest because he wanted someplace "warm" to go to is particularly monstrous. (Defendant's Exh. 1). The callous character of this crime is exacerbated by the fact that Baldwin failed to succeed the first time and the child had to endure suffocation, strangulation, and suffocation again, followed by a two-day unsuccessful fight for his life at Riley's Children's Hospital. Baldwin never showed any remorse. We affirm the trial court's sentence.

## CONCLUSION

Based on the foregoing, we hold that the trial court properly took into account Baldwin's guilty-but-mentally-ill plea, and appropriately identified the aggravating circumstances in pronouncing Baldwin's sentence.

Affirmed.

Tavitas, J. concurs

Mathias, J. concurs with separate opinion

| | |
|---|---|
| Robert J. Baldwin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>19A-CR-2624 |

**Mathias, Judge concurring**

[21]   I concur in full with my colleagues. I write only to reiterate that competency evaluations immediately upon arrest are the best way for our criminal justice system to fairly treat those defendants who are mentally ill or deficient. At some point, such immediate competency evaluations will be recognized as an integral part of due process. *See Wampler v. State*, 67 N.E.3d 633 (Ind. 2017).

[22]   In this case, Baldwin's first mental health evaluation was approximately 30 days after his arrest. His matter-of-fact responses to the doctors in the face of his monstrous acts lead me to believe that an earlier examination would not have mattered.