S & H REALTY AND INVESTMENT COMPANY, Plaintiff-Appellant, *v.* CONSUMERS BUDGET LOAN COMPANY, Defendant-Appellee.

(No. 71-71;

Fifth District—October 20, 1972.

Walker & Williams, of Belleville, (Harry J. Sterling, of counsel,) for appellant.

Apoian & Ross, of East St. Louis, (Samuel F. Ross, Jr., of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This case comes to this court from the trial court's denial of plaintiff's motion for summary judgment and the dismissal of plaintiff's cause of action.

On September 14, 1966, defendant entered into a lease for office space in a building owned by plaintiff located in East St. Louis. The lease

provided for a rental in the amount of $3600 annually, payable in monthly installments of $300 for a term of five years. On April 17, 1970, defendant directed a notice of termination to plaintiff, claiming the right to do so under paragraph 9 of the lease, asserting that it had "lost some $86,000 in receivables," that the "Federal Reserve Bank caused the prime rate of interest to increase," and that defendant has "suffered several armed robberies," and "customers were reluctant to do business in the shopping area with its many vacancies."

The paragraph in the lease relied upon by defendant reads as follows:
"It is agreed by and between the parties hereto that if during the term of this lease or any extension or renewal thereof, any law, decision, regulation or condition exists, continues or is made effectual in this City, State or Nation which in the judgment of the lessee adversely affects or makes it unprofitable for the lessee to carry on its business in these premises, then in any such event this lease may be cancelled by the Lessee by serving a ninety [90] day written notice of cancellation on the Lessor or its [his] authorized agent and Lessee shall not be liable for any installments of rent accruing after the effective date of cancellation contained in said notice."

Defendant furnished its check in the amount of $900 with said notice. Plaintiff did not negotiate the check, but instituted suit to declare the lease binding until its expiration date of August 31, 1971, and to collect damages in the sum of $5000.

Defendant maintains that the word "condition" in paragraph 9 can be interpreted properly to mean "economic conditions" and, therefore, it was entitled to exercise a right or option to cancel or terminate the lease before the expiration of the stated terms.

Plaintiff opposes this position arguing that the rule of *ejusdem generis* restricts the meaning of "condition" to a "meaning of the same general character, sort, kind, or class" as "law, decision, regulation." By plaintiff's definition "conditions" would refer to "enactments or rulings of governmental units" and not to "environmental or economic factors."

Inasmuch as it is clear that this lease *could* be terminated under some circumstances and inasmuch as defendant is not relying on "any law, decision [or] regulation" which "adversely affects it," deciding the merits becomes one of determining the meaning in this lease of "condition."

The rule of *ejusdem generis* relied on by plaintiff was subjected to logical analysis in *Gage v. Cameron* (1904), 212 Ill. 146, 72 N.E. 204. In that opinion, after defining the maxim *ejusdem generis* as a specific application of the broader maxim *noscitur a sociis* ("Words are known by the company they keep." 17A C.J.S. 149) and as a "rule of construction

that, when general words follow particular words, the former can mean only things or persons of the same kind or class as those, which are particularly mentioned," the court restricted its application as follows:

"In the first place, in defining the meaning of the maxim *ejusdem generis,* and applying it to the construction of statutes and contracts, the cases, decided by this court, are nearly all cases where the word 'other' is used to qualify the general terms, which follow the specific designations. \* \* \* [Here follows a lengthy list of examples from cited cases.] \* \* \* In the second place, the rule, that, where an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as those specified, is only one of the many rules of construction, which are employed for the purpose of ascertaining the intention of the legislature, or of the contracting parties, as expressed in a statute or contract sought to be construed, 'and where from the whole instrument a larger intent may be gathered, the rule under consideration will not be applied in such manner as to defeat such larger intent;' or the rule will not be applied where from the whole statute or contract a larger intent may be gathered, if the application of the rule will operate to defeat such larger intent. \* \* \* In the third place, 'the restriction of general words to things *ejusdem generis* must not be carried to such an excess as to deprive them of all meaning. The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing, which can be called *ejusdem generis.* If the particular words exhaust a whole *genus,* the general words must refer to some larger class. \* \* \*.' "

In the case at bar, to limit the meaning of "condition" to a category *ejusdem generis* with those specifically named would be to render it surplusage and practically meaningless. The words "law, decision, regulation" for all practical purposes exhaust the genus of enactments or rulings of governmental units, and, therefore, the general word "condition must refer to some larger class. The maxim *ejusdem generis,* thus must yield to another rule of construction of written contracts. "No word in a contract is to be treated as meaningless if any meaning which is reasonable and consistent with other parts can be given it." 17A C.J.S. 180.

■■ "Courts must construe written contracts according to the intention of the parties as expressed in the terms of the contract. \* \* \* In arriving at that intention, effect must be given to each clause, word and term employed by the parties rejecting none as meaningless or surplusage unless absolutely necessary." *Olson v. Rossetter* (1947), 330 Ill.App. 304, 71 N.E.2d 556.

■■ Since plaintiff is a realty and investment company and presumably knowledgeable concerning matters involving leases and clauses involving termination thereof, and presumably knowledgeable regarding the possible deterioration of business conditions in a particular community, it cannot be said that our construction of the lease is repugnant to the intention of the parties. There is nothing absurd about including in a contract a provision that "if during the term of this lease * * * any * * * condition exists * * * which in the judgment of lessee adversely affects or makes it unprofitable for the lessee to carry on its business in these premises * * *." It may be heavily favorable to the lessee, but that does not make it fail for want of consideration or mutuality. The agreement was not illusory and lacking in mutuality because both were bound, the lessor to provide certain space, the lessee to pay certain rentals, the term is for a specific time unless described circumstances made continuance unprofitable for the lessee, the lessor to be advised and notified in a certain manner.

The trial court's denial of plaintiff's motion for summary judgment and dismissal of plaintiff's cause is affirmed.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.