Malcolm LEWIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Appellee.

No. 49A02–9901–CR–34.

Court of Appeals of Indiana.

April 11, 2000.

Transfer Denied June 14, 2000.

James W. Cunningham, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Sr. Judge

Following a jury trial, Malcolm Lewis appeals his convictions for disseminating

matter harmful to minors and conducting a performance harmful to minors, both Class D felonies.[1] Lewis raises eleven issues on appeal, which we consolidate and restate as ten.

I. Whether the evidence is sufficient to support his convictions.

II. Whether the trial court abused its discretion by denying Lewis a discovery request.

III. Whether the trial court abused its discretion by denying Lewis's request for a special *voir dire* procedure.

IV. Whether fundamental error occurred because some of the jurors were unable to hear part of the testimony of the State's witnesses.

V. Whether the trial court erred by denying Lewis's motion for a mistrial based upon an out-of-court communication between a witness and several jurors.

VI. Whether the trial court erred by denying Lewis's motion for mistrial based upon a juror's observation of Lewis in the presence of a deputy near a holding cell.

VII. Whether the jury's verdicts were inconsistent.

VIII. Whether Lewis's sentence is manifestly unreasonable.

IX. Whether the trial court abused its discretion by imposing both enhanced and consecutive sentences.

X. Whether the totality of the circumstances demonstrates a denial of due process.

We affirm.

The facts most favorable to the verdict reveal that Lewis showed a videotape to the fourteen-year-old niece of his girlfriend. The videotape showed Lewis on a bed naked. It then showed a woman entering the room, and Lewis and the woman began kissing. The victim did not want to watch the tape, and she fell asleep on the floor. Thereafter, Lewis called the victim's name, and she awoke. Lewis was standing over her and exposing his penis. Lewis was convicted of disseminating matter harmful to minors and conducting a performance harmful to minors. This appeal followed.

## I.

### *Sufficiency of the Evidence*

Lewis argues that the evidence is insufficient to support his convictions. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

Lewis was convicted of disseminating matter harmful to minors and of conducting a performance harmful to minors. As to the first crime, the State was required to show that Lewis "knowingly or intentionally ... disseminate[d] matter to minors that is harmful to minors." IC 35–49–3–3(1). As to the second crime, the State was required to prove that Lewis "knowingly or intentionally ... engage[d] in or conduct[ed] a performance before minors that is harmful to minors." IC 35–49–3–3(4). IND.CODE § 35–49–2–2 (1993) defines when matters or performances are harmful to minors.

A matter or performance is harmful to minors for purposes of this article if:

(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2) considered as a whole, it appeals to the prurient interest in sex of minors;

---

1. IND.CODE § 35–49–3–3 (Supp.1997).

(3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what it is suitable matter for or performance before minors; and

(4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

Lewis first argues that the State failed to present any evidence regarding whether the matter he disseminated or the performance he conducted was patently offensive to prevailing standards in the adult community. The State did not present expert testimony or other evidence specifically directed toward proving prevailing community standards. Lewis argues that without this evidence the jury was left to impose its own standards which might not have reflected prevailing standards in the adult community. Lewis concludes that without some type of evidence regarding prevailing community standards, the evidence does not support his conviction.

 Indiana's appellate courts have not yet decided whether the State must provide evidence of community standards in prosecutions for dissemination of matter or conducting performances harmful to minors. However, we find our jurisprudence regarding obscenity prosecutions informative. In prosecutions for obscenity, the State is required to prove that the matter or performance at issue is in fact obscene. IND.CODE § 35–49–3–1 (1993). A matter or performance is obscene if:

(1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

(2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

IND.CODE § 35–49–2–1 (1993). Thus, in determining whether a matter or perfor-

mance is obscene, the jury must consider community standards. However, the State need not present any evidence regarding community standards. *Saliba v. State,* 475 N.E.2d 1181, 1184–85 (Ind.Ct.App.1985). Rather, the obscenity determination may be based on the jury's viewing of the allegedly offensive matter alone. *Fordyce v. State,* 569 N.E.2d 357, 363 (Ind.Ct.App. 1991); *Van Sant v. State,* 523 N.E.2d 229, 240 (Ind.Ct.App.1988); *Saliba,* 475 N.E.2d at 1184. We find no reason for holding the State to a higher standard of proof in prosecutions for disseminating matter or conducting performances harmful to minors. In fact, Lewis concedes that this body of law is applicable to his case. Nevertheless, he asks that we overrule this precedent and require the State to present evidence regarding community standards.

Lewis cites two cases in support of his request that we overrule our precedent. First, he cites Justice Frankfurter's concurring opinion in *Smith v. California,* 361 U.S. 147, 160–67, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). In that concurrence, Justice Frankfurter opined that it violates due process to prevent a defendant in an obscenity prosecution from introducing expert testimony regarding contemporary community standards in an attempt to prove that the material he disseminated is not obscene. 361 U.S. at 164–66. Contrary to Lewis's implication, Justice Frankfurter's opinion does not suggest that the State must itself provide proof of community standards. Rather, it merely stands for the proposition that a defendant may not be precluded from introducing such evidence himself.

Lewis also cites *United States v. 2,200 Paper Back Books,* 565 F.2d 566 (9th Cir. 1977). In that case, the Court of Appeals for the Ninth Circuit held that the district court did not err in concluding that the government failed to meet its burden of providing information as to the relevant community standards regarding obscenity. *Id.* at 571. Thus, Lewis suggests that the case stands for the proposition that evi-

842

dence regarding community standards is necessary in obscenity actions. Lewis has failed to put the holding of the case in its proper context as is demonstrated by the following language found in footnote eight of the court's opinion:

> While ordinarily we anticipate that a jury or judge is in a position to determine the community standard even without testimony on that issue, we are presented here with the unique circumstance where a judge was unable to do so.... [The judge] [h]aving advised the government of his inability to make the necessary judgment on the community standard, however, it was incumbent on the government to provide evidence on that issue. The government failed to do so and thus did not meet its burden of proof.

*Id.* n. 8. The footnote makes clear that it was only the trial court judge's admission that he did not know the community standard that required the government to provide proof regarding the proper standard. Accordingly, the case does not support Lewis's argument.

■ Next, Lewis argues that the evidence is insufficient to support his conviction for disseminating matter harmful to minors. Specifically, Lewis argues that the videotape he showed the victim does not fall within the definition of matter that is harmful to minors. As previously indicated, IC 35–49–2–2 provides the following definition regarding what matter is harmful to minors.

A matter or performance is harmful to minors for purposes of this article if:

(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2) considered as a whole, it appeals to the prurient interest in sex of minors;

(3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what it is

suitable matter for or performance before minors; and

(4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

The evidence most favorable to the verdict reveals that Lewis showed a videotape to the fourteen-year-old niece of his girlfriend. The videotape showed Lewis on a bed naked. The tape then showed a woman entering the room, and Lewis and the woman began kissing. Lewis argues that the evidence does not establish that the tape was a matter harmful to minors. Lewis cites *Smith v. State,* in which this court observed that "nudity alone is not enough to make material legally obscene." 413 N.E.2d 652, 653 (Ind.Ct.App.1980), *trans. denied* (quoting *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974)). However, the tape here does not depict mere nudity. It shows a naked Lewis engaged in intimate activity with a woman near a bed. The evidence is sufficient to support the conclusion that Lewis disseminated matter to a minor that was harmful to minors.

■ Lewis also argues that we should invade the province of the jury in this case for the purpose of rejecting the credibility of the victim's testimony, which he characterizes as inherently improbable. In rare cases, an appellate tribunal may impinge upon the jury's responsibility to judge the credibility of witnesses. *Davis v. State,* 658 N.E.2d 896, 897 (Ind.1995), *cert. denied* 516 U.S. 1178, 116 S.Ct. 1275, 134 L.Ed.2d 221 (1996). Sometimes referred to as the "incredible dubiosity rule," this proposition adheres when we are confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *White v. State,* 706 N.E.2d 1078, 1079 (Ind. 1999).

■ Lewis identifies evidence that he characterizes as contradictory. First, the victim testified that Lewis exposed his penis to her while wearing blue jeans. The victim did not know whether Lewis's pants

were zipped or unzipped. Although the victim was unclear regarding the details of the incident, her testimony was not contradictory.

█ Second, the victim's cousin testified that he asked the victim whether her allegations regarding Lewis's behavior were true. She told him that the incidents did not occur. While this evidence does contradict the victim's testimony, it does not make the victim's testimony inherently improbable. The jury was capable of making a determination regarding the victim's credibility.

█ Finally, Lewis contends that the State failed to present sufficient evidence to disprove his alibi defense. "The State is not required to rebut directly a defendant's alibi. It may disprove the alibi by proving its own case in chief beyond a reasonable doubt." *Lott v. State,* 690 N.E.2d 204, 209 (Ind.1997). Lewis's girlfriend testified that he was with her and her children at the movies on March 16, 1998, the date the incidents at issue took place. However, the victim testified that the incident took place on March 16, 1998. The victim's memory regarding the particular date was refreshed by the fact that she had made entries in her journal regarding the incident and that the dates of these journal entries indicated that the incident in fact took place on March 16, 1998. The jury was free to credit the victim's testimony over Lewis's alibi evidence. The evidence is sufficient to support Lewis's convictions.

## II.

### *Discovery Request*

Lewis argues that the trial court abused its discretion by denying his discovery request. Lewis sought to discover all of the victim's diary entries. The victim's diary entries were of significance because she had made entries regarding her relationship with Lewis and his conduct towards her. The State requested that Lewis be provided with only that portion of the diary relating to the contact between Lewis and the victim. The State argued that permitting Lewis to discover the remaining portions of the diary would be unduly oppressive and hurtful to the victim because of the highly personal nature of the entries. Accordingly, the State requested that the court conduct an *in camera* review to determine the relevant entries. The trial court conducted this review, and it permitted Lewis to discover only six entries. The court concluded that the other entries were irrelevant to the case. Lewis contends that the court should have permitted him to discover all of the entries.

█ When a defendant requests discovery in a criminal case, the following test must be applied to determine whether the information is discoverable:

(1) there must be a sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance); and (3) if the particularity and materiality requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in non-disclosure.

*In re WTHR–TV,* 693 N.E.2d 1, 6 (Ind. 1998). Trial court rulings on the elements of this test are reviewed for an abuse of discretion. *Id.* It is also within the trial court's discretion to conduct an *in camera* review to determine the validity of any objection to the production of material. *Id.* at 8.

Here, Lewis sought discovery of a specific item – the victim's diary entries. The State requested an *in camera* review so that the court could prevent Lewis from discovering irrelevant material that was deeply personal to the victim. Acting within its discretion, the trial court conducted an *in camera* review of the diary entries. Based upon this review, the court concluded that all but six entries in the diary were irrelevant and refused Lewis's request to discover them. Since a trial

844

court need not permit the discovery of information that is immaterial to the defense, the court could not have abused its discretion by denying Lewis's request to the extent that the entries were in fact irrelevant.

Lewis suggests that the remaining entries might have contained information regarding prior false accusations, inconsistent statements, or the victim's state of mind as it bore on the issues in his case. Of course, Lewis is unable to identify particular relevant items since he did not have access to the entries. Likewise, we are unable to determine whether any of the items were in fact relevant because a copy of the diary is not included in the record. If Lewis had wished for this court to review the substance of the trial court's decision, the proper procedure would have been to petition this court to review the diary *in camera*. *See Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 999 (Ind.Ct.App.1983), *trans. denied.* Lewis's argument in this respect is waived.

Finally, Lewis cites two cases where this court reversed convictions based upon the trial court's denial of a defendant's discovery request. *Hulett v. State*, 552 N.E.2d 47 (Ind.Ct.App.1990), *trans. denied; Sturgill v. State*, 497 N.E.2d 1070 (Ind.Ct.App.1986). In both of those cases, the trial court denied the defendants' discovery requests without conducting an *in camera* review of the requested material to determine its relevance. In both cases, this court observed that a discovery violation would not have occurred had the trial court conducted an *in camera* review and had it released relevant information discovered during that review. *Hulett*, 552 N.E.2d at 50; *Sturgill*, 497 N.E.2d at 1073. Here, the trial court conducted an *in camera* review and released relevant information. The trial court did not abuse its discretion.

## III.

### Voir Dire

Lewis argues that the trial court abused its discretion by refusing his request for a special *voir dire* procedure. Lewis requested that the court submit to the jury a supplemental questionnaire that contained six sensitive questions. Lewis then requested an *in camera voir dire* of any person who answered any of the questions affirmatively. Lewis sought this procedure because of his concern that potential jurors would be reluctant to discuss in open court the topics referred to in the questionnaire.

"A trial court has broad discretionary power to regulate the form and substance of *voir dire* examination." *Timberlake v. State*, 690 N.E.2d 243, 261 (Ind. 1997), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Generally, a criminal defendant does not have the right to have each juror separately and individually questioned. *Id.* at 262. "Individualized voir dire may be required, however, in a situation where circumstances are highly unusual or potentially damaging to the defendant." *Id.*

Lewis sought to have the potential jurors questioned individually regarding whether they or their family members had ever been sexually abused as a child, whether they or their family members had ever been accused of sexually abusing a child, whether they or their family members had ever been a party to or a witness in a sex crime prosecution, or whether they or their family members had ever been a party to or a witness in any welfare proceeding to remove a child from the home. The trial court denied Lewis's request for a special procedure, and instead indicated that the court itself would examine the venire in this area.

Each of the questions posed by Lewis were undoubtedly personal in nature. However, personal and sensitive questions are frequently asked during *voir dire*, and in the case of sex crimes, it would seem that these types of questions would be the rule and not the exception. As Lewis has

not shown that the circumstances of his case were highly unusual, we cannot conclude that the trial court abused its discretion by denying Lewis's request for a special *voir dire* procedure.

## IV.

### *Jurors' Ability to Hear Witness Testimony*

Lewis argues that fundamental error occurred because some of the jurors were unable to hear portions of the testimony at trial. During the trial, two jurors indicated that they found it difficult to hear portions of the testimony from the State's witnesses. The two jurors indicated that other jurors were also having trouble hearing. Lewis contends that his due process and confrontation rights were violated because the jurors did not hear all of the testimony.

 In order for the jurors to properly perform their duty, it is essential that they be able to hear the testimony. However, the fact that jurors indicated that they had difficulty hearing does not, of itself, mandate that a defendant's conviction be vacated. In *Mann v. State*, 251 Ind. 145, 239 N.E.2d 696 (1968), the defendant argued on appeal that the jurors had not been able to hear the witnesses. The defendant had not requested a mistrial or otherwise objected at trial. Our supreme court held that this failure resulted in waiver. *Id.* at 697. Moreover, the court noted that the trial judge used extra precaution to have witnesses repeat answers and to request that the parties and the jurors immediately notify the court if they were unable to hear. *Id.*

 Here, Lewis did not request a mistrial based upon the inability of the jurors to hear testimony. This would result in waiver, except that Lewis has argued that the error was fundamental. Nevertheless, we cannot conclude that any error occurred. Like the trial judge in *Mann,* the trial court took precautions to ensure that the jurors could hear the testi-

mony. Witnesses were asked to speak louder and slower at times. Too, when informed that the jurors were finding it difficult to hear, the judge instructed the jurors to notify her by raising their hands if they could not hear. Fundamental error did not occur.

## V.

### *Communication Between Witness and Jurors*

 Lewis argues that the trial court erred by denying his motion for a mistrial based upon an out-of-court communication between a witness and several jurors. The trial court's determination of whether to grant a mistrial is afforded great deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Bradley v. State*, 649 N.E.2d 100, 107 (Ind.1995). To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* However, mistrial is an extreme remedy invoked only when no other measure can rectify the perilous situation. *Id.* We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Id.* at 107–08.

 While on a break, three jurors saw a witness for the State in the hallway. The witness was crying and very emotional. The jurors and the witness did not speak to each other. Lewis moved for a mistrial on the basis that the jurors might have bonded with the witness in some way. The court denied Lewis's request for a mistrial, but it did individually question each of the jurors. The jurors indicated that they were unaffected by the incident. When given further opportunity to request that the jurors be removed for cause, Lew-

is's counsel declined to make such a request. Under these circumstances, the trial court did not err by denying Lewis's motion for a mistrial.

## VI.

### Jurors' Observation of Defendant Near Holding Cell

■ Lewis contends that the trial court erred by denying his motion for a mistrial based upon several jurors having seen him with a deputy standing near a holding cell. Lewis argues that his presumption of innocence was harmed by this incident. Lewis cites no authority for the proposition that he was entitled to a mistrial under these circumstances. Therefore, his argument is waived. Indiana Appellate Rule 8.3(A)(7); *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 n. 3 (Ind.Ct. App.1997), *trans. denied.* Waiver notwithstanding, Lewis was not entitled to a mistrial. Lewis declined the opportunity to have the jurors admonished regarding this incident. As indicated, mistrial is an extreme remedy to be invoked when no other remedy can rectify the situation. *Bradley,* 649 N.E.2d at 107. An admonishment would have been sufficient to cure any possible harm that occurred as a result of this incident.

## VII.

### Inconsistent Jury Verdicts

■ Lewis argues that the jury's verdicts were inconsistent and contrary to law. Lewis was charged with three counts of criminal activity. The State alleged in Count I that he committed sexual misconduct with a minor. He was acquitted of this charge. Lewis was convicted of Counts II and III, conducting a performance harmful to minors and disseminating matter harmful to minors, respectively. Lewis contends that the evidence he presented in his own defense for Counts II and III was just as compelling as the evidence he presented with respect to Count I, and as such, the jury's verdicts were inconsistent.

The verdicts were not inconsistent. The State alleged that Lewis committed sexual misconduct with a minor on March 19, 1998. The State alleged that Lewis committed the other two acts on March 16, 1998. The jury could have concluded that the acts alleged to have occurred on March 16, 1998 actually took place but that those on March 19, 1998 did not. Moreover, even if Lewis's defense on Counts II and III were as compelling as his defense on Count I, this would not necessarily make the verdicts inconsistent. The jury could have simply concluded that the State failed to meet its burden of proof as to Count I without any consideration of Lewis's defense.

## VIII.

### Manifestly Unreasonable Sentence

■ Lewis also contends that his sentence is manifestly unreasonable. This court will revise a sentence authorized by statute only where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B); *Birdsong v. State,* 685 N.E.2d 42, 48 (Ind. 1997). Otherwise, sentencing is left to the sound discretion of the trial court. *Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995).

■ Lewis contends that the maximum possible executed sentence for his crimes is four years pursuant to Ind.Code § 35–50–1–2 (Supp.1997). Lewis received a six-year sentence, with four years executed. Lewis contends that the maximum sentence should be reserved for the worst offenders, and that there was evidence presented at his sentencing hearing indicating that he did not fall within this category of offenders. Based upon our review of the record, we cannot conclude that Lewis's sentence is manifestly unreasonable.

## IX.

### Enhanced and Consecutive Sentences

The court sentenced Lewis to three years on each conviction, suspended one year on each sentence, and ordered the sentences to be served consecutively, for a total executed sentence of four years. Lewis contends that the court erred by imposing enhanced and consecutive sentences.

▬▬ The trial court has the discretion to determine whether a sentence will be enhanced or mitigated due to aggravating or mitigating factors. *Concepcion v. State*, 567 N.E.2d 784, 790 (Ind.1991). A single factor may support the enhancement of a presumptive sentence and the imposition of consecutive sentences. *Id.* at 791. Where the trial court finds aggravating or mitigating circumstances, it is required to state its reasons. The statement should include: an identification of the significant aggravating and mitigating circumstances, specific facts and reasons leading the court to find the existence of such circumstances, and an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Pruitt v. State*, 622 N.E.2d 469, 474 (Ind.1993), *reh. denied.*

▬▬ Lewis argues that the trial court failed to articulate its reasons for both enhancing his sentence on each conviction and ordering that the sentences be served consecutively. The trial court found three aggravating factors—that Lewis has a history of criminal and delinquent activity, that he was on probation for a rape conviction at the time he committed this offense, and that he is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. Any one of these alone could support the imposition of both enhanced and consecutive sentences. *Concepcion*, 567 N.E.2d at 791. In finding that Lewis has a history of criminal activity, the trial court identified his convictions for dealing in a sawed-off shotgun, possession of marijuana, conversion, criminal mischief, and rape. In finding that Lewis was on probation at the time he committed the present offense, the court noted Lewis's rape conviction. This is a sufficient articulation of the court's reasons for finding these aggravating circumstances.

▬▬ Lewis also contends that the trial court failed to articulate that it evaluated and balanced the aggravating and mitigating factors in determining his sentence. The trial court found one mitigating circumstance – that it would work a hardship on Lewis's dependents for him to serve a long sentence. Based upon this mitigator, the court suspended one year on each of Lewis's sentences. This indicates that the trial court in fact evaluated and weighed the aggravating and mitigating circumstances. The trial court did not err.

## X.

### Due Process

Finally, Lewis contends that the culmination of errors in this case resulted in the deprivation of his due process rights. As we have found no errors, Lewis was not denied due process.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part

I fully concur with respect to Parts I through VII and as to Part X. However, I concur in result with regard to Parts VIII and IX.

As to Part VIII, the facts disclose that Lewis was sentenced to three years upon each Class D conviction to be served consecutively, but with one year suspended as to each count. He was not sentenced to two years upon each count although his

aggregate executed time to be served would be only four years. The fact remains that the sentences imposed were for three years each. A sentence may not be suspended unless it has first been imposed.

At first glance therefore, it would appear that I.C. 35-50-1-2(c) would prohibit an aggregate sentence of more than four years, which is the presumptive sentence for a Class C felony, the next highest class. Such is not the case however because the statute is phrased not in terms of the sentence imposed, but rather with reference to the "terms of imprisonment" to be served. For this reason, I agree that the sentences imposed were not manifestly unreasonable.

With respect to Part IX, I agree that it was not error to impose both enhanced sentences and to order the sentences to be served consecutively. I do so, however, solely because the record clearly demonstrates the existence of multiple aggravators and the trial court so found. I do not agree with the general statement made by the majority that a single aggravator would have sufficed. My disagreement stems from the statement made by this court in *Staton v. State* (1994) Ind.App., 640 N.E.2d 741, 743, *trans. denied,* as follows: "[o]rdinarily, a single aggravating factor should not be used both to impose an enhanced sentence and consecutive sentences." See also *Buchanan v. State* (1998) Ind., 699 N.E.2d 655.

Notwithstanding these two caveats, I concur in the affirmance of the convictions and the sentences imposed.