## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 08 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Caryn Nieman-Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary S. Kirkwood, | June 8, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A04-1612-CR-2779 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, | The Honorable Gretchen S. Lund, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 20D04-1603-F5-84 |

**May, Judge.**

[1] Gary S. Kirkwood appeals his convictions of Level 5 felony operating a vehicle while a habitual traffic violator ("HTV")[1] and Class A misdemeanor battery.[2] Kirkwood argues the State did not present sufficient evidence he committed either of the crimes. We affirm.

# Facts and Procedural History

[2] On March 27, 2016, Jamie Dunfee and Kirkwood were in Elkhart County, Indiana, at the home of Dunfee's father. The pair had been "bickering back and forth," (Tr. at 56), about their relationship when Kirkwood grabbed his belongings and walked away from the house. Kirkwood returned shortly thereafter, and Dunfee told him she would take him home in her car. She handed Kirkwood her keys for him to drive. At the time, Dunfee had a valid driver's license, but Kirkwood did not have a valid license as he had forfeited his driving privileges for life after being found to be an HTV.

[3] On the way home, Dunfee was not paying attention to the route Kirkwood was taking. Kirkwood abruptly slammed on the brakes causing the car to come to a stop facing south in a yard on the shoulder of State Road 15. Dunfee and her two small dogs, which were sitting on her lap, hit the dashboard.

---

[1] Ind. Code § 9-30-10-17(a) (2015).

[2] Ind. Code §§ 35-42-2-1(b)(1) & 35-42-2-1(c) (2014).

[4]     Jeremy Troyer was in his backyard when he heard brakes screeching. Within thirty to forty-five seconds he went to his front yard and observed Kirkwood outside of the car on the driver's side arguing with Dunfee, who was standing outside the passenger's side. Kirkwood threw the car keys into a nearby yard. Dunfee retrieved her keys, and then Kirkwood pushed her down. Troyer saw Dunfee lying on the ground in front of the car with Kirkwood standing over her.

[5]     Jeffery Norton was traveling north along State Road 15 and saw Dunfee's car parked on the shoulder. Norton stopped his truck when "it appeared that [Kirkwood] was hitting [Dunfee]." (*Id.* at 83.) According to Norton, it appeared Kirkwood was dragging Dunfee toward the front of the car. Norton yelled at Kirkwood to stop hitting Dunfee. Kirkwood responded that Norton should "mind [his] own business," (*id*. at 86), went across the road to Norton, and hit Norton on the right eye area knocking Norton's glasses off. The two men had a short "schoolyard brawl." (*Id*. at 87.) Then Kirkwood retrieved his belongings out of Dunfee's car and ran away.

[6]     Norton called 911 and Officer Jennifer Smith with the Elkhart County Sheriff's Department responded to the scene. Officer Smith saw Dunfee was upset. She also observed redness and swelling on Norton's face. Officer Smith took pictures of Norton's injuries.

[7]     Corporal Milovich with the Elkhart County Sheriff's Department was also dispatched to the area to look for a suspect described as "a white male wearing

a yellow shirt, carrying a backpack, bald, no hair." (*Id.* at 124.) Cpl. Milovich detained Kirkwood, who matched the description, while he was walking through a yard. Kirkwood was handcuffed, placed in the back of Cpl. Milovich's patrol car, and driven back to the scene. Cpl. Milovich ran Kirkwood's information through the Indiana BMV database and saw Kirkwood's driving privileges were forfeited for life. Cpl. Milovich transported Kirkwood to the Elkhart County Correctional Facility.

[8] The State charged Kirkwood with one count of Level 5 felony operating a vehicle while an HTV, one count of Class A misdemeanor battery for hitting Norton, and one count of Class B misdemeanor battery for hitting Dunfee. The jury found Kirkwood not guilty of Class B misdemeanor battery, but guilty of Level 5 felony operating a vehicle while an HTV and Class A misdemeanor battery. He was sentenced to six years for the felony conviction, with two years suspended to reporting probation, and 365 days for the Class A misdemeanor conviction to run concurrent to the felony sentence.

# Discussion and Decision

[9] When reviewing sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh evidence or assess the credibility of witnesses, as that is the role of the fact-finder. *Id.* When confronted with conflicting evidence, we must consider it most favorably to the verdict. *Id.* We affirm a "conviction unless no reasonable

fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence, but rather the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

## 1. Operating a Vehicle while an HTV

To prove Kirkwood committed Level 5 felony operating a vehicle while an HTV, the State was required to prove beyond a reasonable doubt that (1) Kirkwood, (2) operated a motor vehicle, (3) after his driving privileges were forfeited for life. *See* Ind. Code § 9-30-10-17. Kirkwood argues this conviction should be reversed because Dunfee's incredibly dubious testimony was insufficient to prove he drove Dunfee's vehicle.

The incredible dubiosity rule is limited to situations in which there was: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). The rule is applied in narrow circumstances and should be applied here only if "testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015). Further, the testimony from the witness must run "counter to human experience." *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). Kirkwood argues Dunfee's testimony was incredibly dubious because Dunfee's version of events was inconsistent and improbable. We disagree.

[12] Kirkwood asserts incredible dubiosity applies because Dunfee was the only witness to testify he was driving, Dunfee had Kirkwood drive her vehicle even though Kirkwood did not have a valid license, Dunfee does not remember much of the car ride, and Dunfee was drinking that day.

[13] However, Kirkwood's arguments fail to satisfy the elements of incredible dubiosity. Dunfee testified there was no other reason she wanted Kirkwood to drive her car that day than "to make sure he was secure enough that he was going to get home . . . on his own." (Tr. at 58.) Dunfee testified she did not remember much of the car ride not because she was intoxicated "to the point of blacking out," (*id.* at 62), but because she was "daydreaming." (*Id.*) It is not inherently impossible, so that no reasonable person could believe it, that a passenger would be daydreaming during a car ride and not remember the route taken or that Dunfee desired Kirkwood to drive himself home. *See Lewis v. State*, 726 N.E.2d 836, 842-43 (Ind. Ct. App 2000) (victim's testimony was not incredibly dubious though she was unclear on some details of the incident), *trans. denied*. Further, Dunfee never contradicted herself during trial testimony, and the jury chose to believe her version of events.[3]

---

[3] Kirkwood argues that the jury did not believe Dunfee's testimony, as it did not convict Kirkwood of Class B misdemeanor battery. However, Kirkwood does not explain why the jury's failure to find him guilty of one crime means the jury could not have believed a witness's testimony regarding another crime. We decline to hold Dunfee's testimony was incredibly dubious simply because the jury did not convict Kirkwood of all charges. *See, e.g.*, *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002) (defendant was not convicted of all charges and, nevertheless, the witness's testimony was not incredibly dubious).

[14] There was also circumstantial evidence presented at trial. Troyer testified that when he first witnessed the pair fighting, about thirty to forty-five seconds after hearing the vehicle screech to a halt, they were outside of the car with Kirkwood on the driver's side and Dunfee on the passenger's side. Troyer and Dunfee both testified that Kirkwood was holding the car keys, which he then threw into a nearby yard.

[15] Kirkwood's arguments are requests for us to reweigh evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court does not reweigh evidence or judge the credibility of witnesses). As the trial testimony was not "incredibly dubious or inherently improbable," we hold the evidence was sufficient for the jury to find Kirkwood guilty of Level 5 felony operating while an HTV. *See, e.g., Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007) (sufficient evidence to uphold defendant's conviction of operating a motor vehicle while privileges are forfeited for life when arresting officer's testimony not found to be incredibly dubious).

## 2. Class A Misdemeanor Battery

[16] Kirkwood also challenges his conviction for battery, arguing the State presented insufficient evidence Kirkwood caused bodily injury to Norton.

[17] A Class A misdemeanor conviction of battery is justified when a person knowingly or intentionally: (1) touches another person in a rude, insolent, or angry manner, and (2) that conduct results in bodily injury to another person. Ind. Code §§ 35-42-2-1(b)(1) & 35-42-2-1(c). "Bodily injury" is defined as "any

impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. The State alleged Kirkwood inflicted at least minimal "bodily injury" on Norton as "human experience rationally dictates that when a person is punched in the eye/cheek area, there is at least some level of pain involved." (Appellee's Br. at 12). Kirkwood contends that because Norton testified he did not feel pain from the blow and did not notice any swelling, the State did not prove beyond a reasonable doubt that Kirkwood caused bodily injury to Norton. We disagree.

[18] It is not necessary for the State to prove Norton suffered physical pain to satisfy the element of bodily injury. *See Tucker v. State*, 725 N.E.2d 894, 897-98 (Ind. Ct. App. 2000) (battery conviction upheld when victim testified being grabbed did not hurt, but did leave a bruise, which the court held was a physical impairment), *trans. denied*. Redness and bruises have been held sufficient proof of bodily injury. *Delahanty v. State*, 658 N.E.2d 660, 662 (Ind. Ct. App. 1995) (battery causing bodily injury affirmed when the victim testified she did not suffer physical pain, but did sustain bruising and a red mark, which demonstrated bodily injury).

[19] Norton testified he noticed redness to his face after the blow to his eye and cheek area.[4] The red area was also in the exact area Kirkwood hit Norton.

---

[4]Kirkwood also asserts Norton had been drinking that day and Norton's redness could have been caused by something other than Kirkwood's hit. However, Norton testified that he did not notice any redness to his face prior to the hit. Further, it is well established that "it is the fact-finder's role, not that of the appellate

Norton testified that he did not remember feeling any pain, as his "main objective" was to stop Kirkwood from hitting Dunfee. (Tr. at 100.) In addition, Officer Smith testified to seeing and taking photographs of the redness and swelling on Norton's face around his right cheekbone. It is reasonable to infer from the evidence that Norton could have been too concerned with Dunfee's welfare to notice any pain, and that the redness on Norton's right eye and cheek was caused by Kirkwood's blow to that area.

[20] As stated above, we cannot reweigh evidence or assess the credibility of witnesses. *See Drane*, 867 N.E.2d at 146 (appellate court does not reweigh evidence or judge the credibility of witnesses). We conclude that Norton's injuries satisfy the definition of "bodily injury," the State presented sufficient evidence that Norton suffered bodily injury at Kirkwood's hands, and the Class A misdemeanor battery conviction was appropriate. *See Delahanty*, 658 N.E.2d at 662 (sufficient evidence of physical impairment to uphold battery conviction when victim sustained bruises and redness).

# Conclusion

courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *See Drane*, 867 N.E.2d at 146.

The State presented sufficient evidence Kirkwood committed Level 5 felony operating a vehicle while an HTV and Class A misdemeanor battery. Accordingly, we affirm.

Affirmed.

Brown, J., and Pyle, J., concur.