## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 18 2019, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Casey, *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff*. | January 18, 2019 <br><br> Court of Appeals Case No. 18A-CR-1775 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia A. Gooden, Judge <br><br> Trial Court Cause No. 49G21-1705-F4-19051 |

**Brown, Judge.**

[1] Michael Casey appeals his conviction for unlawful possession of a firearm by a serious violent felon as a level 4 felony. He raises one issue which we revise and restate as whether the trial court erred or abused its discretion in permitting his statement to police to be played for the jury a second time. We affirm.

## Facts and Procedural History

[2] On May 17, 2017, Indianapolis Metropolitan Police Officer Scott Emminger was dispatched to 44 North Euclid Avenue regarding a person who had been shot. When Officer Emminger arrived at 44 North Euclid, he observed two women come from the porch at 48 North Euclid who appeared to be in a hurry and "were trying to get in a blue Chevy Cav[alier] in an open front door at 44 N Euclid." Transcript Volume II at 17. Officer Emminger had Officer Carver detain the females while he went to see if he could locate a person who had been shot at 44 North Euclid. Officer Emminger observed a man lying on the living room floor of the residence at 44 North Euclid, confirmed the man had been shot, and rendered aid. Indianapolis Metropolitan Police Detective Jason Leitze arrived at the scene and spoke with Officer Emminger and Tara Hamilton, one of the two women at the scene, who was arrested by officers. Hamilton had a puppy with her as she was being arrested. Hamilton indicated that Casey, who had arrived at the scene, could take the puppy.

[3] Later that day, Detective Leitze received an anonymous phone call that led him to believe potential evidence could be found at 48 North Euclid, and he obtained a search warrant for 48 North Euclid to look for firearms, ammunition, spent casings, live ammunition, and paperwork related to

firearms. Detective Leitze executed the search warrant that same day with the assistance of the Indianapolis SWAT Team. Casey and two others were present at the residence.[1] Detective Leitze found a 16-gauge shotgun manufactured by Stevens under a bed. He also found ammunition and spent cartridges. Detective Leitze placed Casey into custody, transported him to the City County Building for an interview, and learned that Casey was not allowed by law to possess a firearm. After Casey was informed of his *Miranda* rights, he made a statement to police which was recorded.

[4] On May 23, 2017, the State charged Casey with unlawful possession of a firearm by a serious violent felon as a level 4 felony. On June 4, 2018, the State alleged that Casey was an habitual offender.

[5] On June 12, 2018, the court held a jury trial. During Detective Leitze's testimony, the State moved to admit Casey's statement to police as State's Exhibit 20. The court admitted Casey's statement over objection. Prior to playing a redacted version of the statement, the prosecutor moved to admit as Exhibit 23 the parties' stipulation indicating that all redactions and omissions from the audio/video recorded statement were by agreement. Without

---

[1] When asked who was at 48 North Euclid at the time of the execution of the search warrant, Detective Leitze answered: "Mr. Casey was present as well as two additional (inaudible)." Transcript Volume II at 25.

objection, the court admitted the stipulation. The recording was then played for the jury.[2]

[6] When asked what he learned from Casey's statement, Detective Leitze answered: "That Mr. Casey claimed ownership of this shotgun found at 48 North Euclid." *Id.* at 33. The prosecutor asked: "And he keeps referencing a Stevens, is that the same shotgun we saw in court today?" *Id.* Detective Leitze answered: "That is the shotgun right in front of me." *Id.*

[7] After the examination of Detective Leitze by the parties, the court held a sidebar in response to questions from jurors, and stated:

> Question 1 is what was, I think this is in the video, what was the question before the confrontation about finding the gun? Oh okay. Question 2 what time did you get, what time did you get the tip, question 3 how long does it take to get a warrant, question 4 how did detective know [Casey] was unlawfully in the possession, if you want to look at them? I don't know where it was, I know that one of jurors - -. I'm not going to give that question, if they had been asking to see the video again and they do. 2 and 3 will be given. Stipulation (inaudible) okay.

*Id.* at 41.

[8] The court held another sidebar and stated:

> Counsel, so we may do (inaudible) excuse him I don't know, this is the same woman that couldn't hear, she has another question,

---

[2] The transcript indicates that the recording was played at 2:26 p.m. and ended at 2:35 p.m.

question number 5 for the record in 2 parts, part A I missed [Casey's] answer regarding whose bedroom that was at 48 North Euclid so she clearly couldn't hear, and she obviously made a note that she couldn't hear, so I don't know what your position is I mean I don't (inaudible) I don't know what your position is, I have a bit of a problem with her not being able to hear and asking questions that clearly could be answered by watching the video I don't know whether it's fair to leave her wondering when everyone else heard it, but I don't know what your position is about playing part of it, the part that she missed (inaudible) or letting the officer answer the question based on?

*Id.* at 44.

[9] Following a lengthy discussion outside the presence of the jury, and over defense counsel's objection, the court indicated it would replay the entire video again. Defense counsel asked: "And is it possible to admonish about not making deliberation, not making a decision until after they've heard everything, including the closing arguments?" *Id.* at 54. The court stated: "That is already in the instructions and is in my admonishment, but I would." *Id.* The court stated: "I would just admonish the jury that you will have instructions, both ones already given to you and one's [sic] will be given you, to you in a few moments with respect to final instructions that will discuss how you are two [sic] way [sic] all the pieces of evidence that you would get okay." *Id.* The court told the jurors to wave if there was any part they could not hear, and the video was played for the jury.

[10] The State rested. Casey testified that he lived at 8523 Lena Court, that Hamilton was his girlfriend, that the shotgun belonged to Hamilton, and that he

did not fire the shotgun two days before May 17th. When asked if anyone else fired it two days before May 17th, Casey answered: "It was like 3 days, [Hamilton] was selling, selling it to a Mexican." *Id.* at 56. He testified that he "googled [the gun] because they don't make them, they don't make that gun no more, it's an antique . . . ." *Id.* Defense counsel asked Casey, "Okay we saw you on this video saying that it was yours and that you fired it 2 days before why did you say that?" *Id.* Casey answered: "I was scared and confused, and I didn't want [Hamilton] to go to jail." *Id.* When asked why he was scared and confused, he stated that he had just smoked "Katie" which is "blunts . . . spice." *Id.* at 56-57.

[11] On rebuttal, Detective Leitze testified that he did not tell Casey when he first entered the interview room that he found his shotgun. The prosecutor asked: "So the first mention when you say are there any weapons at 498 [sic] North Euclid, he says yes that 16 gauge shotgun that came from Mr. Casey?" *Id.* at 60. Detective Leitze answered: "Correct." *Id.* He also testified that Casey did not seem under the influence of spice or any other narcotic.

[12] The jury found Casey guilty of unlawful possession of a firearm. Casey waived his right to a jury trial on the habitual offender allegation, and the court found him to be an habitual offender.

[13] The court sentenced Casey to twelve years for unlawful possession of a firearm by a serious violent felon as a level 4 felony and enhanced the sentence by ten years for being an habitual offender for an aggregate sentence of twenty-two

years. The court's sentencing order states: "Enhancement Sentence Split. 8 years DOC 2 Years MCCC Program Deemed Appropriate." Appellant's Appendix Volume II at 12.

## *Discussion*

[14] The issue is whether the trial court erred or abused its discretion in permitting Casey's statement to police to be played for the jury a second time. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. A trial court "has the duty to manage and control the proceedings conducted" before it, *Garcia v. State*, 517 N.E.2d 402, 405 (Ind. 1988), and "is given wide latitude of discretion in carrying out [its] duties." *Pitman v. State*, 436 N.E.2d 74, 78 (Ind. 1982).

[15] Casey cites Ind. Evidence Rule 403 and asserts that the unsolicited presentation of the duplicitous and cumulative evidence deprived him of his right to a fair trial. He argues that Ind. Code § 34-1-21-6 outlines strict circumstances when a jury may be entitled to receive duplicitous or cumulative evidence and none of the circumstances were present in his case.

[16] The State argues the trial court properly exercised its discretion by replaying Casey's statement to police in response to jury questions. It asserts that the trial court reasonably exercised its discretion to replay the evidence based on the multiple jury questions asking about the content of the already played video and other concerns regarding audio problems and redaction. The State also contends that Casey has not shown substantial prejudice.

[17] Initially, we note that Casey did not specifically mention Ind. Evidence Rule 403 in his objection to the replaying of the video at trial. Ind. Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." To the extent the objection by Casey's counsel that the replaying was "cumulative to just keep hammering on it over, and over, and over," falls under Rule 403, we will address the issue.[3] Transcript Volume II at 45.

---

[3] We agree with Casey that Ind. Code § 34-36-1-6 does not apply because that statute addresses a request for information after the jury retires for deliberation. Ind. Code § 34-36-1-6 provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or
(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

[18]    The trial court replayed Casey's recorded statement due to multiple questions from the jury and a juror's inability to hear. We have previously held that, "[i]n order for the jurors to properly perform their duty, it is essential that they be able to hear the testimony." *Lewis v. State*, 726 N.E.2d 836, 845 (Ind. Ct. App. 2000), *trans. denied*. We cannot say that Casey has demonstrated that replaying his statement to police would not aid the jury. We note that the redacted recording was less than ten minutes, was replayed in its entirety, and was limited to a single replay in the presence of the trial judge. Under these circumstances, we cannot say that the trial court abused its discretion. *See Chambers v. State*, 422 N.E.2d 1198, 1204 (Ind. 1981) (holding that, "[a]t most, the repeated playing of the tape was cumulative evidence" and that the trial court did not err in allowing the tape to be replayed so all of the jurors could hear it); *see also Harris v. State*, 659 N.E.2d 522, 526-527 (Ind. 1995) (holding that the trial court did not abuse its discretion by sending exhibits and a tape player to the jury room when the jury began its deliberations where the audio taped confession served to aid the jury in its attempt to understand to what extent defendant participated in the charged crimes and how the crimes were committed, and there was little risk that the jury would misuse or give undue weight to these exhibits because the audio tapes had already been played in open court).

## Conclusion

[19]    For the foregoing reasons, we affirm Casey's conviction.

[20]    Affirmed.

Bailey, J., and Bradford, J., concur.